**PAN AMERICAN WORLD AIRWAYS, INC., Petitioner,**

v.

**The CIVIL AERONAUTICS BOARD, Respondent.**

**No. 81–1963.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1982.

Decided July 23, 1982.

and Ivars V. Mellups, Attys., C. A. B., and John J. Powers, III, and Susan J. Atkinson, Attys., U. S. Dept. of Justice, Washington, D. C., were on the brief, for respondent.

Michael P. Schopf, Atty., C. A. B., and Barbara Thorson, Atty., U. S. Dept. of Justice, Washington, D. C., also entered appearances for respondent.

Before TAMM and GINSBURG, Circuit Judges, and EDMUND L. PALMIERI,* United States District Judge for the Southern District of New York.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this appeal we are asked to review an order of the Civil Aeronautics Board (CAB or the Board) directing Pan American World Airways (Pan Am) to arbitrate certain claims filed by a former National Airlines (National) employee pursuant to the labor protective provisions (LPP's) imposed by the Board as a condition to approving the merger of National into Pan Am. Two questions are presented for our review. We must first consider whether the Board reasonably determined that the claimant's eligibility for LPP benefits was an arbitrable issue. Second, we must decide whether the claimant alleged facts that, on their face, stated claims for which relief could be granted under the LPP's. Because we believe the Board did not abuse its discretion in finding a colorable right to arbitration in this case, we answer both questions in the affirmative and accordingly affirm the Board's order in its entirety.

## I. BACKGROUND

### A. *The LPP's*

Under section 408 of the Federal Aviation Act, 49 U.S.C. § 1378 (1976 & Supp. III 1979), mergers of air carriers are subject to CAB approval upon terms and conditions that are "just and reasonable." 49 U.S.C. § 1378(b)(1). Pursuant to this provision

Thomas R. Howell, Washington, D. C., with whom James M. Verner, Ronald B. Natalie, and Thomas E. Acey, Jr., Washington, D. C., were on the brief, for petitioner.

Alan R. Demby, Atty., C. A. B., Washington, D. C., with whom David M. Kirstein,

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

and its statutory predecessor, the Board has for many years conditioned its approval of airline mergers upon acceptance of LPP's "designed to protect the employees of the merged airlines from any adverse impact the merger may have on conditions of employment ... and also to establish machinery for the peaceful settlement of any labor-management disputes arising out of the merger." *International Association of Machinists & Aerospace Workers v. Northeast Airlines, Inc.*, 473 F.2d 549, 559 (1st Cir.), *cert. denied*, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85 (1972) (citations omitted). Standard LPP's have evolved [1] and are normally imposed by the Board subject only to minor modifications tailored to suit particular circumstances. The LPP's provide generally that employees shall be no worse off after a merger than before, that the company shall pay costs incurred by employees as a result of the merger, and that employees who are discharged because of the merger are entitled to a dismissal allowance. One provision authorizes arbitration of any disputes arising under the LPP's.[2]

## B. *The Motion To Compel Arbitration*

On October 24, 1979, the CAB approved Pan Am's application for acquisition of control of, and merger with, National subject to Pan Am's acceptance of the standard LPP's. *Pan American—Acquisition of Control of, and Merger with, National Airlines*, Docket 33283, [hereinafter *Pan Am-National Merger*], C.A.B. Orders 79–12–164 and 79–12–165 (adopted Oct. 24, 1979, effective Dec. 27, 1979). Pan Am accepted the LPP's, and the merger was consummated in January 1980. On February 3, 1981, Robert Wallace, a former National employee who accepted employment with Pan Am after the merger, filed a motion requesting the Board to compel arbitration of a dispute involving his right to LPP benefits. In his original petition and subsequent pleadings, Wallace claimed entitlement to benefits under three separate LPP provisions. Wallace's first claim was for a "displacement allowance" under section 4 of the LPP's.[3] Such allowances are to be given to employees who are "placed in a worse position with respect to compensation" as a result of the merger. Wallace admitted that he had suffered no reduction in salary since the merger, but he claimed that his total monetary compensation—including bonuses, expense account remuneration, and prospective raises—was lower in his position with Pan Am than in his previous position with National. Second, Wallace claimed that under section 6 of the LPP's he was entitled to retain certain fringe benefits that he had enjoyed in his position with National, such as a private office and secretary, credit cards, business travel, and job responsibility.[4] Fi-

1. The standard labor protective provisions (LPP's) were set forth by the Civil Aeronautics Board (CAB or the Board) in the United-Capital Merger Case, 33 C.A.B. 307, 342–47 (1961). The particular provisions upon which the Pan Am-National merger was conditioned may be found in the order approving Pan Am's acquisition of National. *See* Pan American—Acquisition of Control of, and Merger with, National Airlines, Docket 33283 [hereinafter Pan Am-National Merger], C.A.B. Orders 79–12–164 and 79–12–165 (adopted Oct. 24, 1979, effective Dec. 27, 1979). The provisions are reprinted in Addendum B to respondent CAB's brief.

2. Section 13(a) of the LPP's imposed in the instant case provides, in pertinent part, that:
    In the event that any dispute or controversy ... arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator .... The decision of the arbitrator shall be final and binding on the parties.
    *See* Brief for Respondent at Addendum B, p. B–9.

3. Section 4(a) of the LPP's provides, in pertinent part, that:
    [N]o employee of either of the carriers involved in the merger who is continued in service shall as a result of the merger be placed in a worse position with respect to compensation than he occupied immediately prior to his displacement ....
    *See* Brief for Respondent at Addendum B, p. B–2.
    Any employee who is so displaced is entitled to a "displacement allowance," the formula for which is provided in section 4(c).

4. Section 6 of the LPP's provides that "[a]n employee affected by the acquisition shall not during the applicable protective period be deprived of benefits attaching to his previous

nally, Wallace charged that his change from a "middle-management level administrator" at National to a "lower-level management procedure writer and processing clerk" at Pan Am constituted a denial of opportunities and continued employment in his former "class, craft, or field of endeavor," contrary to section 12 of the LPP's.[5]

On April 1, 1981, Wallace amended his original motion for an order directing arbitration, stating that on March 31, 1981, he had received notice from Pan Am that his employment would be terminated as of April 13. Wallace alleged that his discharge was in retaliation for his assertion of rights under the LPP's. He accordingly sought arbitration to resolve the "cause, effect and remedy" of his dismissal.

## C. Pan Am's Response to Wallace's Claims

In response to Wallace's claims, Pan Am argued that an employee was entitled to a displacement allowance under section 4 only when there had been a reduction in salary, which Wallace admitted was not the case here. Pan Am further contended that benefits under section 6 accrue only when an employee is entitled to a dismissal or displacement allowance, and that, in any event, the perquisites claimed by Wallace are not "benefits" within the meaning of the section. With regard to Wallace's section 12 claim, Pan Am argued that, since Wallace had not been required to change his field of endeavor but had in fact declined two positions within his field and had accepted a third position with a higher salary, the section was inapplicable. Moreover, Pan Am questioned whether Wallace, as a

member of management, had any rights at all under the LPP's.

Pan Am denied the retaliatory dismissal allegation, stating that Wallace was one of twenty-one employees dismissed as of April 13 for economic reasons unrelated to the merger. Furthermore, the airline contended that Wallace's discharge could not have been in retaliation for his assertion of LPP "rights," since he had failed to allege any facts that would give rise to benefits under the LPP's.

## D. The Board's Orders Directing Arbitration

In July 1981 the Board issued an order directing arbitration of two of Wallace's claims. Pan Am-National Merger, C.A.B. Order 81–7–39 (July 7, 1981); Petitioner's Appendix (P. App.) at 83–88.[6] The Board held that, except with regard to his section 12 claim, Wallace had made an adequate showing of arbitrability.[7] The Board agreed with Wallace that the section 4 protections encompass total monetary compensation, not simply salary, as Pan Am had contended. As Wallace had alleged that both his salary potential and his current non-salary monetary compensation—*i.e.*, bonuses and expense account remuneration—had been diminished as a result of the merger, the Board ruled that he had made a "colorable claim" under section 4 that should be resolved in arbitration. Pan Am-National Merger, C.A.B. Order 81–7–39 at 3–4; P. App. at 85–86. Second, the Board held the discharge of Wallace, if in retaliation for his institution of the LPP action, was merger-related and would trigger the

employment, such as hospitalization, relief and the like." *See* Brief for Respondent at Addendum B, p. B–5.

5. Section 12 of the LPP's provides that:
   No employee of either carrier shall, as a condition of eligibility for the protection afforded by the terms of this order be required to accept employment with the surviving carrier that is not within the class, craft, or field of endeavor in which he was employed by

either carrier on the date of the attached order.
*See* Brief for Respondent at Addendum B, p. B–8.

6. C.A.B. Order 81–7–39 rescinded C.A.B. Order 81–6–54, inadvertently issued on June 8, 1981.

7. The Board held that Wallace's petition presented no cognizable claim to arbitration under section 12, as he had accepted a new position at Pan Am rather than resigning.

dismissal protections of sections 5,[8] 6,[9] and 7.[10] *Pan Am-National Merger*, C.A.B. Order 81–7–39 at 5; P. App. at 87. Thus, in the Board's view, the allegation concerning the discharge was also subject to arbitration under the LPP's. The Board further intimated that such a discharge would be considered retaliatory even if the employee's reliance on the LPP's is misplaced. *Id.* at 5; P. App. at 87.

Third, the Board held that the perquisites claimed by Wallace under section 6 were at least arguably covered by the section and that the issue should therefore be resolved by the arbitrator.[11] *Pan Am-National Merger*, C.A.B. Order 81–7–39 at 4; P. App. at 86. On a Pan Am petition for reconsideration, the Board amended the arbitration directive to indicate that the benefits claimed by Wallace are *not* covered by the section 6 protections, but were "simply aspects of [his] prior position with National which were necessary to carry out his employment responsibility." *Pan Am-National Merger*, C.A.B. Order 81–9–65 (Sept. 11, 1981) at 2; P. App. at 100.

Finally, the Board held that Pan Am's assertion that management employees are excluded from LPP benefits is a matter within the purview of the arbitrator. *Pan Am-National Merger*, C.A.B. Order 81–7–39 at 5; P. App. at 87. In a later order, the Board expounded further upon its reasoning, noting two circumstances in which supervisors and executives are covered by the LPP's: first, where the acquiring carrier *agrees* to such coverage; and, second, where LPP's have been applied routinely within the industry to certain categories of supervisors and executives. *Pan Am-National Merger*, C.A.B. Order 81–10–121 (Oct. 21, 1981); P. App. at 124–27. According to the Board, the arbitrator should decide if either of these circumstances is present in the instant case.

## II. ANALYSIS

### A. *The Issues on Appeal*

In this appeal, Pan Am contends that, in granting Wallace's motion to compel arbitration, the Board erred in three respects: first, in referring to arbitration the question of Wallace's eligibility for LPP coverage; second, in finding that Wallace made out a colorable claim for displacement benefits under section 4; and, third, in finding that Wallace's dismissal claim was arbitrable under section 5. We will address each of these contentions in turn, but first we consider the applicable standard for reviewing the Board's action in this case.

### B. *The Standard of Review*

At the outset we note that the scope of review of the Board order at issue in this case is narrow. *Cohen v. CAB*, 657 F.2d 999, 1002 (8th Cir. 1981). Under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1976), we may set aside the Board's action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or ... unsupported by substantial evidence ...." *Id.*

---

C.A.B. Order 81–7–39 (July 7, 1981) at 4; Petitioner's Appendix (P. App.) at 86.

**8.** Section 5(a) of the LPP's provides, in relevant part, that:
"Any employee of either of the carriers participating in the merger who is deprived of employment as a result of said merger shall be accorded an allowance (hereinafter termed a "dismissal allowance") ...." *See* Brief for Respondent at Addendum B, p. B–3.

**9.** *See supra* note 4.

**10.** Section 7 of the LPP's provides employees eligible to receive a section 5 dismissal allowance with the option of receiving a lump sum separation allowance in lieu of the section 5 allowance. *See* Brief for Respondent at Addendum B, pp. B–5–6.

**11.** The Board noted that Wallace's section 6 claim depended, at the outset, upon the resolution of the claims under sections 4 and 5, since "section 6 affords protection for the loss of fringe benefits only for employees who are entitled to a section 4 displacement allowance or section 5 dismissal allowance ...." *Pan Am-National Merger*, C.A.B. Order 81–7–39 at 4; P. App. at 86.

The standards governing arbitration of disputed claims under collective bargaining agreements are "equally applicable" to disputes arising under the LPP's. *See Delta Air Lines v. CAB*, 574 F.2d 546, 550 (D.C.Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). In private contract disputes, arbitration is required of any controverted claim that can reasonably be said to fall within the scope of the arbitration clause. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). All doubts regarding arbitrability "should be resolved in favor of coverage." *Id.* In determining whether an LPP claim is arbitrable, the Board plays the role of a court in a traditional labor dispute and is justified in referring to arbitration any dispute it determines to be at least arguably covered by the LPP's.

By imposing LPP's upon merged airlines in the public interest, the Board has not thereby "transformed itself into a labor board or labor contract court, bound to pass on every question of labor law which might arise out of a merger ...." *Air Line Employees Association v. CAB*, 413 F.2d 1092, 1095 (D.C.Cir.1969). Rather, the Board "may properly decide that [its] scarce resources should be husbanded for the tasks for which it considers itself to be expert, rather than frittered away in an area more suitable for an experienced labor arbitrator." *American Airlines, Inc. v. CAB*, 445 F.2d 891, 895 (2d Cir. 1971), *cert. denied*, 404 U.S. 1015, 92 S.Ct. 681, 30 L.Ed.2d 663 (1972). Thus, the Board is fully entitled—and indeed expected—to rely on the expertise of an arbitrator to settle disputes that at least arguably arise under the LPP's.

C. *Wallace's Eligibility for LPP Benefits*

Pan Am argues that the Board erred in ordering arbitration of Wallace's claims without making the necessary threshold finding of arbitrability on the question whether managerial personnel are entitled to LPP protections. As noted above, in ordering arbitration of Wallace's claims, the Board stated that LPP coverage may be extended to members of management in two instances: first, when the acquiring carrier agrees to provide LPP protections to managerial personnel; and, second, when it has been the consistent industry practice to afford such protections to management.[12] The Board left for the arbitrator the question whether either of these circumstances is present in this case and thus whether Wallace is covered by the LPP's. Pan Am contends that the Board had a duty to resolve this question itself rather than "relegating" it to an arbitrator. We disagree. We believe that by delineating the circumstances in which supervisors and executives are covered by the LPP's, the Board fulfilled its duty to make the threshold legal determination of arbitrability.

The cases cited by Pan Am are not to the contrary. The collective bargaining agreement construed in *United Steelworkers, Local 1617 v. General Fireproofing Co.*, 464 F.2d 726 (6th Cir. 1972), contained a definition of "employee" that *expressly excluded* supervisors from coverage. *See id.* at 729. Similarly, in *General Telephone Co. v. Communications Workers*, 402 F.2d 255 (9th Cir. 1968), the arbitration agreement was not susceptible of any interpretation that would allow coverage of management personnel. *See id.* at 256.

In the instant case, the Board's reading of the LPP's to permit coverage of management in certain circumstances is consistent with the broad terms of section 2(d) of the LPP's, which defines a covered employee as "an employee of the carriers other than a temporary or part-time employee." *See* Brief for Respondent at Addendum B, p. B–1. As Wallace was neither a temporary nor a part-time employee, he is not excluded from LPP coverage by the terms of the definition.

Pan Am contends, however, that the Board has previously ruled that the LPP's do not apply to management personnel. It is true that in several early cases the Board imposed a $6,500 salary ceiling on LPP cov-

---

12. *See supra* p. 8.

erage with the intention of excluding managerial personnel. *See United-Western Acquisition of Air Carrier Property*, 11 C.A.B. 701, 711–12 (1950); *Braniff-Mid-Continent Merger Case*, 15 C.A.B. 708, 718 (1952); *North Atlantic Route Transfer Case*, 12 C.A.B. 124, 138 (1950). In the *Delta-Chicago and Southern Merger Case*, 16 C.A.B. 647 (1952), however, the Board approved a merger in which the airlines were "willing to allow the [LPP's] to be applicable to all [permanent, full-time] employees, regardless of their total annual compensation." *Id.* at 654. As a result of the carriers' decision on this point, the Board removed the $6,500 salary limitation included in earlier LPP formulations. *Id.* The standard LPP's used today by the Board include no salary ceiling and are therefore susceptible of an interpretation that allows coverage of management personnel.

In this case, the arbitrator is left only with the task of receiving factual evidence that will allow him to fit the instant case into the legal framework provided by the Board. A review of the record shows that there are factual issues present here that are particularly well suited to arbitration. For example, Wallace asserted that Pan Am represented that all management employees would be covered by the LPP's.[13] Pan Am responded that any promise of that kind could only have been made by National without Pan Am's consent.[14] These conflicting claims regarding the alleged consensual expansion of LPP coverage should be thoroughly examined in an arbitral forum. Arbitration is also the most sensible mechanism for determining industry practice with respect to LPP coverage. Thus, the Board acted within its discretion in referring to arbitration the question of Wallace's eligibility for LPP benefits.

D. *Wallace's Displacement Claim*

Pan Am contends that in sending Wallace's claim under section 4(a) to arbitration, the Board made "an unexplained departure from its own past decisions formulating, interpreting and applying the LPP's." Moreover, the airline argues, Wallace's claim is not within the scope of section 4(a) because that section covers only *salary* decreases, and not decreases in other forms of monetary compensation such as bonuses, expense account remuneration, and future salary increases.

It is true that originally the LPP governing displacement allowances, section 4(a), covered only "loss of salary." *See United-Western Acquisition of Air Carrier Property*, 11 C.A.B. 701, 711 (1950). Later in 1950, however, the Board, in another merger case, expanded the coverage of section 4(a) by substituting the term "compensation" for "loss of salary." *See North Atlantic Route Transfer Case*, 12 C.A.B. 124, 135 (1950). To our knowledge, the broader term has been used in LPP's imposed by the Board in all subsequent merger cases. Furthermore, although there are few Board decisions construing the term "compensation," the Board has, on at least two occasions, rejected proposals to limit the displacement allowance to loss of "salary" in the strict sense of that term.

In the *Delta-Chicago and Southern Merger Case*, 16 C.A.B. 647, 656–57 (1952), the Board denied a request by Delta to eliminate such forms of compensation as incentive pay or nighttime and shift differentials. There, the Board stressed that the rationale for protecting employees does not depend on the *form* of the lost pay:

> We do not see why such losses in pay should be treated any differently from reductions in compensation that result from a change in [salary]. Insofar as the affected employee is concerned, the injury from loss of pay is the same, even though the reasons for the reduction may be different.

*Id.* at 656–67.

Similarly, in the *United-Capital Merger Case*, 33 C.A.B. 307, 324 (1961), the

---

13. Pan Am-National Merger, Petitioner's Statement in Opposition to Respondent's Petition for Clarification and Reconsideration of Order 81–9–65 at 2; P. App. at 112.

14. Pan Am-National Merger, Reply of Pan American World Airways, Inc. to Answer of Robert Wallace at 2; P. App. at 122.

Board rejected a proposal by United Airlines to exclude overtime compensation from the base used in computing displacement allowances. In so doing, the Board stated that any "departures from the formula which would reduce the protection afforded employees are unwarranted." *Id.* Thus, the Board has shown a willingness to construe the term "compensation" to include more than salary in the strictest sense. We therefore cannot agree with Pan Am that the Board's action in referring Wallace's displacement claim to arbitration was inconsistent with CAB precedent; nor do we believe the Board acted in an arbitrary or capricious fashion in referring Wallace's displacement claim to arbitration.

Pan Am also makes several arguments directed at the merits of Wallace's particular claims of salary deprivation. In advancing these arguments, the airline fails to recognize that in directing arbitration, the Board quite properly did not in this case, and does not generally, address the merits of particular disputes. Arguments on the merits are properly considered only by the arbitrator and thus do not constitute a basis for challenging the action of the Board in ordering arbitration.

### E. *Wallace's Dismissal Claim*

█ To support its contention that the Board erred in finding Wallace's dismissal claim arbitrable, Pan Am makes two arguments. The airline begins by noting that under section 1 of the LPP's, coverage extends only to "changes in employment due to and resulting from [the] merger." Pan Am maintains that Wallace was discharged for economic reasons unrelated to the merger and that therefore Wallace is not entitled to section 5 benefits. Wallace has alleged, however, that he was discharged in retaliation for instituting the LPP action. According to Wallace, in the past when there has been economic necessity to discharge an employee within a Pan Am department, the airline's policy has been to dismiss the employee with the lowest evaluation. *Pan Am-National Merger*, Amendment to the Motion for an Order Directing Arbitration

at 2; P. App. at 66. Wallace contends that, in dismissing him, Pan Am did not follow this policy, as he was not the employee in his department with the lowest evaluation. *Id.* As the Board noted in its order directing arbitration, Pan Am has not responded to Wallace's charge regarding its dismissal policy. *Pan Am-National Merger*, C.A.B. Order 81–7–39 at 5; P. App. at 87. The type of factual inquiry required to resolve the disagreement regarding the reason or reasons for Wallace's discharge is precisely the sort that lends itself to arbitration. Thus, we believe that the Board acted reasonably in referring the dismissal claim to the arbitrator.

Pan Am next advances the rather creative argument that even if the retaliatory nature of the discharge is conceded, Wallace's dismissal would still not be arbitrable because he has never asserted any "rights" under the LPP's. This argument relates to the airline's position that Wallace, as a member of management, is not covered by the LPP's and that, in any event, the facts alleged by Wallace do not state any claims under the LPP's. Thus, the airline argues, it cannot be required to arbitrate a discharge that was in retaliation for assertion of claims that "fall outside the protections provided by the LPP's." Brief for Petitioner at 43. As we have stated above, however, it will be for the arbitrator to determine the extent to which Wallace is entitled to LPP benefits.

█ Moreover, a retaliatory discharge of the sort alleged by Wallace is related to the merger and is therefore arbitrable notwithstanding that some of the "rights" asserted by the claimant may prove not to be covered by the LPP's or that, on the merits, the claims may be resolved in the carrier's favor by the arbitrator. Throughout the Board proceedings and in this court as well, Pan Am has hinted that a retaliatory dismissal does not require arbitration under section 13(a) of the LPP's as it is not merger-related. *See, e.g., id.* at 12, 40–41. This position is untenable. The LPP's were accepted by Pan Am as a condition to approval of its merger with National; any discharge in retaliation for a good faith claim under those provisions is, of course, merger-

562

related. To hold otherwise would render the LPP's meaningless. Merged carriers could simply fire any employee who sought to invoke the LPP protections and contend that, as the discharge was unrelated to the merger, there is no basis for a dismissal allowance. The chilling effect that such firings would have on other employees who might consider filing LPP claims is obvious and unacceptable. We therefore hold that the Board acted reasonably and within the scope of its discretion in ordering arbitration of Wallace's discharge.

## III.

We hold that the Board acted within the scope of its discretion in referring Wallace's claims to arbitration. The Board may, at the behest of either party, review the arbitral decision to determine whether the letter and purpose of the LPP's support the arbitrator's interpretation and application of them. Any final Board determination is, of course, subject to judicial review under section 1006(a) of the Federal Aviation Act, 49 U.S.C. § 1486(a) (1976).

The Board's order directing arbitration of Wallace's claims is affirmed.

*It is so ordered.*