TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO, Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Pan American World Airways, Inc., International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, International Association of Machinists & Aerospace Workers, Intervenors.

No. 82–2080.

United States Court of Appeals, District of Columbia Circuit.

Argued 27 Sept. 1983.

Decided 20 Jan. 1984.

Teamsters, Chauffeurs, Warehousemen & Helpers of America.

John O'B. Clarke, Jr., Washington, D.C., was on the brief, for intervenor, Intern. Ass'n of Machinists & Aerospace Workers.

Malcolm A. Goldstein, Washington, D.C., for petitioner.

Joseph L. Manson, III, Washington, D.C., with whom Ronald B. Natalie and Thomas E. Acey, Jr., Washington, D.C., were on the brief, for intervenor, Pan American World Airways, Inc.

Before TAMM and WILKEY, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

Concurring Opinion filed by Senior Circuit Judge MacKINNON.

WILKEY, Circuit Judge:

In this case petitioners appeal from two orders of the Civil Aeronautics Board (CAB) requiring arbitration proceedings.[1] We find that the CAB properly issued the orders, and accordingly affirm.

## I. FACTS

On 24 October 1979, the Civil Aeronautics Board approved a merger between Pan American World Airways, Inc. (Pan Am) and National Airlines (National).[2] The CAB conditioned its approval of the merger on the parties' acceptance of labor protective provisions (LPPs). Following the approval of the President, the merger became effective on 19 January 1980.

The labor protective provisions imposed by the CAB were the standard provisions used by the agency since 1972. Section 3 required the merging airlines to provide for the integration of seniority lists "in a fair and equitable manner."[3] Section 13 obli-

Thomas L. Ray, Asst. Gen. Counsel, C.A.B., Washington, D.C., with whom Ivars V. Mellups, Acting Gen. Counsel and Barbara Thorson, Atty., C.A.B., Robert B. Nicholson and William J. Roberts, Atty., Dept. of Justice, Washington, D.C., were on the brief, for respondent.

James A. McCall, Washington, D.C., with whom Robert M. Baptiste and Roland P. Wilder, Jr., Washington, D.C., were on the brief, for intervenor, Intern. Broth. of

1. CAB Order 82–8–63 (13 August 1982) [hereinafter, Order], Joint Appendix [JA] at 1; CAB Order 82–12–62 (16 December 1982) [hereinafter, Order on Rehearing], JA at 6.

2. CAB Order 79–12–163/164/165 (24 October 1979).

3. Section 3 of the Labor Protective Provisions reads:

gated the parties to resolve disputes involving seniority rights either through negotiations or arbitration.[4] By virtue of these provisions the CAB retained power to direct arbitration of merger-related seniority disputes.

From the outset the merger posed labor difficulties, since the employees of the two merging airlines were represented by different labor unions using different craft and class systems. National's mechanics, cleaners and stock clerks had been in one bargaining unit, represented by the International Association of Machinists and Aerospace Workers (IAM). National's station agents and ramp agents formed another bargaining unit, represented by the Air Line Employees Association (ALEA). At Pan Am, however, the mechanics and cleaners were grouped with the ramp agents in a classification represented by the Transport Workers Union of America, AFL–CIO (TWU). The Pan Am stock clerks and station agents formed another bargaining unit, represented by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT).[5]

After the CAB's approval of the merger, the National Mediation Board (NMB) ruled that Pan Am's premerger bargaining structure should prevail at the new merged airline. The National employees were folded into the Pan Am system according to their predominant duties at National. Because the two airlines had different craft and classification systems, employees who had belonged to the same bargaining unit at National were split into two different bargaining units at Pan Am. National cleaners thus joined a bargaining unit represented by the TWU, while their former co-unionist stock clerks joined a different bargaining unit represented by the IBT. Similarly, the National ramp agents were assigned to the TWU, while their former co-unionist station agents joined the IBT.

The integration plan approved by the NMB inevitably created disputes which had to be resolved through arbitration. A group of former National mechanics, calling themselves the "Maintenance Legal Aid Committee" (MLAC), opposed the TWU seniority list because it used a date-of-hire method instead of a rank-ratio method. Pan American and TWU voluntarily consented to arbitrate the issue with MLAC under the LPPS. On 17 December 1981 Arbitrator David H. Stowe issued an order upholding date-of-hire integration as appropriate under the LPPS.[6]

The IBT seniority integration agreement was also challenged by former National employees. The IBT seniority list had been set after former Secretary of Labor William J. Usery was retained to mediate in negotiations between IBT and Pan Am. With Usery's assistance, the airline and the union agreed on a seniority system of list integration based on an employee's last date of hire, and on a point seniority district basis, with a concurrent right allowing employees whose jobs are abolished to bump junior employees. The CAB approved this plan,[7] and a panel of this court subsequently af-

---

Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.

4. Section 13(a) of the Labor Protective Provisions reads in relevant part:
Section 13(a). In the event that any dispute or controversy . . . arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator . . . . The decision of the arbitrator shall be final and binding on the parties.

5. The collective bargaining structures of both airlines before the merger and of Pan American after the merger are set forth in some detail in the CAB orders under review.

6. Arbitration Pursuant to CAB Order 79–12–164 in Docket 33282 (17 December 1981) [hereinafter, Stowe Award]; JA at 23, 58.

7. CAB Order 82–3–16 (4 March 1982).

firmed the CAB's decision with a *per curiam* order.[8]

The negotiations between Pan Am and the unions apparently did not specifically resolve whether the former National stock clerks and station agents—now represented by the IBT—could cross the Pan Am class and craft lines, and use their seniority to bump their former co-unionists from their jobs. The IBT and IAM argued that a fair integration would allow the former National employees a one-time chance to cross the Pan Am class and craft lines, while TWU— which apparently had not sought to secure such a right for its members—opposed the IBT's and IAM's claim. Claiming that the issue properly arose under the LPPs, the IBT and the IAM sought a CAB order compelling arbitration of the issue.

The CAB found that the issue raised does "involve a seniority dispute which was the direct result of the Pan American-National merger and therefore falls within the scope of the LPPS."[9] Consistent with this finding, the CAB ordered the parties to arbitrate the dispute,[10] and on rehearing again denied the requests of the TWU and Pan Am.[11]

Pan Am and the TWU seek review of the CAB orders requiring arbitration. They advance two principal arguments: first, that the issue sent to arbitration does not involve a bona fide seniority dispute under the LPPs, and so is outside the jurisdiction of the CAB,[12] and secondly, that any issue as to the validity of the seniority lists has been resolved in the prior arbitration.[13]

## II. ANALYSIS

We note at the outset that the scope of review of the Board order at issue here is very narrow. Under Section 10(e) of the Administrative Procedure Act, we may set aside the Board's action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or . . . unsupported by substantial evidence. . . ."[14]

■■■ As this court has previously held, the standards governing arbitration of disputed claims under collective bargaining agreements are equally applicable to disputes arising under the LPPs.[15] In the collective bargaining context, arbitration is required of any controverted claim that can reasonably be said to fall within the scope of the arbitration clause, with all doubts being resolved in favor of arbitration. In determining whether an LPP claim is arbitrable, the CAB "plays the role of a court in a traditional labor dispute and is justified in referring to arbitration any dispute it determines to be at least arguably covered by the LPPs."[16] Thus, if the CAB was correct

---

**8.** *P.A.I.N. v. CAB,* 704 F.2d 1294 (D.C.Cir.1983) (*per curiam* order affirming CAB order 82–3–16).

**9.** Order at 4; JA at 4.

**10.** Order at 5; JA at 5.

**11.** Order on Rehearing; JA at 6.

**12.** Brief of Petitioner Transport Workers Union of America, AFL–CIO [hereinafter, TWU Brief] at 9–23; Brief of Intervenor Pan American World Airways, Inc. [hereinafter, Pan Am Brief] at 22–39.

**13.** TWU Brief at 24–25; Pan Am Brief at 19–22.

**14.** 5 U.S.C. § 706(2) (1982).

**15.** *Pan American World Airways, Inc. v. CAB,* 683 F.2d 554, 559 (D.C.Cir.1982); *Delta Air Lines, Inc. v. CAB,* 574 F.2d 546, 550 (D.C.Cir.),

*cert. denied,* 439 U.S. 819, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978).

**16.** *Pan American World Airways, Inc. v. CAB,* 683 F.2d 554, 559 (D.C.Cir.1982). Petitioners argue that the *Pan American* case is distinguishable because it did not involve a jurisdictional question. They argue that the CAB could not delegate to an arbitrator the jurisdictional issue.

In analyzing this claim, it is important first to note that the request for arbitration on its face clearly involves a seniority dispute squarely within the jurisdiction of the CAB under the LPPs. This is thus not a case where the CAB never had jurisdiction; at most, it would be a case where the agency was stripped of jurisdiction because of a competing grant of exclusive jurisdiction to the NMB.

The petitioners' argument would thus be more compelling if a showing had been made that the arbitration would encroach on the NMB's jurisdiction. *See Air Line Pilots Ass'n,*

in concluding that this case was arguably covered by the LPPs, and if the issue had not already been resolved under the LPPs, the CAB's order must be upheld.

### A. Presence of Seniority Dispute

The predominant issue in this case involves the proper characterization of the complaint. If the dispute involves seniority rights, then it arises under the labor protection provision which requires "fair and equitable" integration of the seniority lists,[17] and so clearly comes under the sway of the CAB. If, on the other hand, the issue really involves representational rights—as the TWU and Pan Am claim it does[18]—then it raises issues reserved to the NMB, and the CAB has at least arguably overstepped its bounds.[19]

The CAB determined that the dispute did involve seniority rights.[20] The record shows that this conclusion was not arbitrary and capricious. The kernel of the dispute raised by the IBT is seniority rights. Any relief granted by the arbitrator or the CAB must be couched in terms of seniority rights. The dispute is thus at least facially a seniority dispute.

The TWU and Pan Am argue nonetheless that the case really involves representational rights. They assert that the IBT, through the guise of protecting its members' seniority rights under the LPPs, really seeks to force Pan Am to treat it as the bargaining representative of a class far larger than that allotted to it by the NMB.

This argument fails to persuade. The IBT does not seek to acquire an expanded representational status, nor does it strive to seek future recognition as the bargaining representative for those crafts and classes now represented by TWU. Nor does the IAM seek to perpetuate its representative status in the new, merged airline. Nothing the unions seek would alter the class and craft system approved by the NMB. At most, if the IBT and IAM should win before the arbitrator, some individual employees would be allowed a one-time opportunity to change from one class and craft to another. While some individual employees would be represented by a different union if the arbitrator accepted the two unions' arguments, that alone does not render this a representational dispute. What matters is that although individual employees might for whatever reasons change jobs, the boundaries of the bargaining units would remain unchanged.[21]

### B. Prior Arbitration

The TWU and intervenor Pan Am also argue that any issues as to the fairness of

*Int'l v. Texas Int'l Airlines,* 656 F.2d 15, 23 (2d Cir.1981). However, the current record fails to show that the arbitration will cause a conflict with the NMB.

This case thus fits squarely under *Pan American.* It is simply a case where the Board "is justified in referring to arbitration any dispute it determines to be at least arguably covered by the LPPs." 683 F.2d at 559. The arbitrator remains free to conclude, of course, that the dispute is ultimately not within the LPPs.

17. Labor Protective Provision 3.

18. TWU Brief at 9–23; Pan Am Brief at 22–39.

19. *Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.,* 656 F.2d 16 (2d Cir.1981); *Division No. 14, Order of Railroad Telegraphers v. Leighty,* 298 F.2d 17 (4th Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962).

20. Order at 4, JA at 4.

21. Pan Am and TWU cite a number of cases which they claim establish that this case should be treated as a representational dispute. In this case, however, the IBT is not trying to represent anyone outside its established bargaining unit, and the IAM does not seek to perpetuate its prior representation. It is thus distinguishable from the cases cited by the petitioners, which largely involve disputes over whether a union could represent a specific group of employees, or whether a certified bargaining unit of one group was entitled to represent a larger group of otherwise unorganized employees. *See, e.g., Switchmen's Union v. NMB,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); *Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines,* 656 F.2d 16 (2d Cir.1981); *Adams v. Federal Express Corp.,* 547 F.2d 319 (6th Cir. 1976), cert. denied, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); *Brotherhood of Railway & Steamship Clerks v. United Air Lines,* 325 F.2d 576 (6th Cir.1963), cert. dismissed, 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964); *Ruby v. American Airlines,* 323 F.2d 248 (2d Cir.1963).

the seniority integration under the LPPs was resolved by the prior proceeding before arbitrator Stowe.[22] They decry the reopening of an already resolved dispute.

The prior arbitration did consider the fairness of the seniority lists which were devised following the merger. That arbitration, however, faced different facets of the overall fairness issue, and differed in at least two critical respects.

First, the Stowe award faced an issue not raised here—whether the date-of-hire method was a fair method of integrating the seniority lists.[23] The critical issue presented here, whether the former National employees could use their seniority to bid for jobs under TWU's representation, was not treated. The claim presented here is thus a fresh one, not resolved by the prior proceeding.

Secondly, the parties ultimately seeking relief here—the former National stock clerks and station agents—were not represented before arbitrator Stowe. Even the TWU and Pan Am concede that those employees were not involved in that proceeding.[24] The Board order requiring arbitration here thus conforms fully with the Board's duty to see that all employee groups have a fair opportunity to participate in the integration process.

### III. CONCLUSION

We reach no conclusions as to what result the arbitrator should reach. We find only that the CAB acted within its authority in sending this case to arbitration. For the foregoing reasons, the orders of the CAB are

*Affirmed.*

**22.** TWU Brief at 24–25; Pan Am Brief at 19–22.

**23.** The award issued by arbitrator Stowe read:
The merger of the seniority lists of former National employees and of former Pan Am employees in the Mechanic and Ground Service craft, or class, shall be on the date of

MacKINNON, Senior Circuit Judge (concurring).

In this case it should be pointed out that the CAB doubted that the prior approval of the seniority lists by the arbitrator and the CAB precluded the present claims of IBT and IAM, but the CAB made it clear that Pan Am and TWU would be "free to argue" before the arbitrator that reconsideration of the seniority lists would be unfair to them. Order 82–8–63 at 5 (JA 5). Subject to calling attention to this comment, I concur in the foregoing opinion.

hire basis as set forth in the Agreement dated April 18, 1980 between Pan Am and TWU. JA at 58. The award, which is the only element of the arbitration open to judicial review, is by its terms limited to the "date-of-hire" issue. It says nothing about the dispute raised in this case.

