**INDEPENDENT UNION OF FLIGHT ATTENDANTS, Petitioner,**

**Association of Flight Attendants, Air Line Pilots Association International, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Airline Division, et al., Petitioners-Intervenors,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, Office of the Secretary, Respondent,**

**Pan American World Airways, Inc. and United Airlines, Inc., Attendants, Respondents-Intervenors.**

No. 85–7665.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1986.

Decided Oct. 31, 1986.

George H. Cohen, Bredhoff & Kaiser, Washington, D.C., for petitioner.

Stephen Maldoff, Cohen, Weiss & Simon, New York City, for Ass'n. of Flight Attendants.

James A. McCall, Washington, D.C., for Intern. Broth. of Teamsters, Chauffeurs, etc.

Thomas Ray, U.S. Dept. of Transp., Washington, D.C., for respondent.

Donald Bliss, William T. Coleman, O'Melveny & Myers, Washington, D.C., for Pan American World Airways, Inc.

Paul Duke, Charles A. Miller, Covington & Burling, Washington, D.C., for United Airlines, Inc.

O'Donnell & Schwartz, David B. Rosen, New York City, for Flight Engineers Intern. Ass'n & Transport Workers Union of America.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges *.

GOODWIN, Circuit Judge:

Petitioner Independent Union of Flight Attendants (IUFA) and four labor organizations, as intervenors, seek review of the Department of Transportation's decision not to impose labor protective provisions on Pan American Airways' sale of its Pacific Basin route authorities and assets to United Airlines. The department concluded that labor protective provisions were unnecessary.

Petitioners argue that the decision was erroneously grounded upon an assumption that a strike triggered by the merger would not disrupt the national air transportation system. They say the standard was wrong and they also challenge the department's statement that it considered employee welfare and other relevant factors in its decision.

We need not reach the question whether the agency expressed an incorrect standard in reviewing the proposed merger if the record shows that by any choice of language expressing its rationale, the agency did consider employee welfare, along with other factors in determining whether the proposed merger was in the public interest. The more troubling question is whether an obvious change in Executive branch policy

---

from that of previous administrations is "arbitrary and capricious."

## I.

Sections 401(h) and 408(b) of the Federal Aviation Act provide that any carrier seeking to transfer route authorities or a substantial portion of its assets to another carrier must first obtain approval from the Department of Transportation.[1]  49 U.S.C. §§ 1371(h), 1378(b). The department must grant its approval if it finds, among other things, that the transaction is "consistent with the public interest." *Id.* This public interest review requires consideration of policy factors set out in section 102(a). *Id.* § 1302(a). Where appropriate, the department must condition its approval on the carriers' acceptance of "such terms and conditions as [the department] shall find to be just and reasonable" to protect the public interest. *Id.* § 1378(b).

On April 22, 1985, Pan American and United Airlines filed a joint application for approval of their agreement to transfer Pan American's Pacific Basin assets and route authorities to United Airlines. Various labor parties intervened to request that standard labor protective provisions be imposed on United Airlines as a condition of department approval. These provisions, which the Civil Aeronautics Board had routinely applied to merger and route transfer cases for nearly thirty years, *see e.g., Air Line Pilots Ass'n, Intl. v. DOT,* 791 F.2d 172, 174 (D.C.Cir.1986); *Pan American World Airways, Inc. v. CAB,* 683 F.2d 554, 555–56, (D.C.Cir.1982), would provide displacement and dismissal allowances to employees adversely affected by the transaction and set up a mechanism for the equitable integration of transferring Pan American employees into United Airlines' seniority lists. *See United-Capital Merger Case,* 33 C.A.B. 307, 323–31, 342–47 (1961); *Allegheny-Mohawk Merger Case,* 59 C.A.B. 19, 31–40, 45–49 (1972).

On June 13, 1985, the department instituted formal hearing proceedings to determine whether to approve the transfer. Order 85–6–44 (June 13, 1985). The department expressed its tentative decision to impose labor protective provisions "only if they are shown to be necessary to mitigate possible labor strife that would adversely affect air transportation as a whole." *Id.* at 11 (footnote omitted).

The department conducted a separate hearing on the labor protective provisions issue. All of the labor parties argued that the department's labor-strife standard for imposing labor protective provisions was wrong. The stated standard was faulted for departing from the department's statutory mandate to consider "the need to encourage fair wages and equitable working conditions" for carrier employees, 49 U.S.C. § 1302(a)(3), and from its established policy of considering employee welfare in making a labor protective provisions decision. *See e.g., Air Line Pilots Ass'n v. CAB (ALPA II),* 494 F.2d 1118, 1129 (D.C.Cir.1974); *Northwest-Northeast Merger Case,* 55 C.A.B. 742, 753 (1970); *United-Western, Acquisition of Air Carrier Property,* 11 C.A.B. 701, 708, (1950), *aff'd sub. nom. Western Airlines v. CAB,* 194 F.2d 211 (9th Cir.1952). Pan American and United Airlines opposed the imposition of any labor protective provisions on the grounds that they were unnecessary, costly, and would constitute an unwarranted interference in their business affairs.

After the hearing, the department issued its tentative decision to approve the transaction without imposing labor protective provisions. Order 85–10–41 (October 11, 1985). After considering comments, on October 31, 1985, it entered its Final Order 85–11–67. In denying the labor parties' request for labor protective provisions, the department concluded that (1) Congress' deregulation of the airline industry sup-

---

**1.** The Civil Aeronautics Board originally administered the Act. After the board's sunset in 1984, the department took over these responsibilities. 49 U.S.C. § 1551 as amended by the Civil Aeronautics Board Sunset Act of 1984.

Pub.L. 98–443, 98 Stat. 1703 (1984). For the sake of convenience, we refer only to the "department" in discussing the history of the Act's administration.

ported a substantial change in the labor protective provisions standard; (2) the standard was not met here because a strike against either carrier probably would not threaten the air transportation system as a whole; and (3) seniority integration labor protective provisions were unnecessary in light of the experience of merging companies in other industries and United's willingness to discuss the issue with the relevant labor parties. *Id.* at 5–6, 71–77. In a separate section of the order, the department stated that it had considered employee welfare in analyzing the public interest implications of the transaction. *Id.* at 4–5, 59.

## II.

Both parties argue the effect Congress intended the Airline Deregulation Act of 1978, P.L. 95–504, 92 Stat. 1705 (1978), to have on the department's consideration of employee interests as part of its public interest review of section 408 or 401(h) transactions. The department argues that Congress' deregulatory intent in the Act supports, and may indeed mandate, its decision to withdraw from former practices followed when the industry was regulated.

The labor parties counter that specific language in the Act shows that Congress had just the opposite intent regarding the department's consideration of labor concerns. Before 1978, the department enjoyed an almost open-ended mandate to examine the public interest aspects of section 408 and 401(h) transactions and to impose any necessary protective conditions. *See e.g., Western Airlines v. CAB*, 194 F.2d 211, 213–14 (9th Cir.1952); *Kent v. CAB*, 204 F.2d 263, 265 (2d Cir.), *cert. denied*, 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953). From 1950 to 1978, this mandate routinely resulted in approval of airline mergers and route transfers conditional on the carriers' acceptance of labor protective provisions. *Air Line Pilots Ass'n, Intl. v. DOT*, 791 F.2d 172, 174 (D.C.Cir.1986); *Pan American World Airways, Inc. v. CAB*, 683 F.2d 554, 555–56 (D.C.Cir.1982); Final Order at 73. The former administra-

tors reasoned that labor protective provisions served the public interest by heading off potentially disruptive labor strife and that the public and employers should bear a fair allocation of the cost of redundant labor rather than have all the costs fall upon the employees. *See e.g., Air Line Pilots Ass'n v. CAB (ALPA II)*, 494 F.2d 1118, 1129 (D.C.Cir.1974); *Northwest-Northeast Merger Case*, 55 C.A.B. 742, 753 (1970); *United-Western, Acquisition of Air Carrier Property*, 11 C.A.B. 701, 708 (1950), *aff'd sub. nom. Western Airlines v. CAB*, 194 F.2d 211 (9th Cir.1952).

Congress' passage of the Deregulation Act allowed, if not compelled, the department to reconsider this policy. In the Act, Congress sharply cut back on the scope of the department's public interest review and refocused most of what remained on the goals of increasing airline competition and the industry's reliance on free market forces. *See* H.R.Rep. No. 1779, 95th Cong., 2d Sess. 73, *reprinted in* 1978, U.S. Code Cong. & Ad.News 3737, 3789. As a result, the department almost immediately determined that it could no longer impose labor protective provisions as a routine condition of its approval of section 408 and 401(h) transactions. *National Airlines, Acquisition*, 84 C.A.B. 408, 474–75 (1979). Under a new case-by-case approach, however, it continued to impose labor protective provisions on transactions where affected employees were not protected by their collective bargaining agreement. *See, e.g., Air Florida System-Western Acquisition Show Cause Proceeding*, Order 82–1–148 (January 29, 1982); *Texas Intl.-Continental Acquisition Case*, Order 81–10–66 (August 14, 1981); *Airwest, Acquisition by Republic Airlines*, 86 C.A.B. 1971, 1976 (1980). In this way, the department says that it continued to consider employee interests in making its labor protective provision determination.

In 1985, nearly seven years after deregulation, the department announced the challenged labor protective provisions standard and declared it to be the definitive test for labor protective provision requests.

*Southwest Airline-Muse Air Acquisition Show-Cause Proceeding,* Order 85–6–79 (June 24, 1985) at 30; *Midway-Air Florida Acquisition Show Cause Proceeding,* Order 85–6–33 (June 11, 1985) at 2, 6. The department's rationale for the change was Congress' deregulatory intent in revising and limiting the department's public interest review: "[T]he Deregulation Act contemplated that the government would limit its intervention ·in airline affairs, including labor matters, and ... [as a result] the Department has properly restricted its intervention in labor matters to transportation concerns." Final Order at 74; *see also, Southwest-Muse* at 29–32; *Midway-Air Florida* at 4–5.

■ By this analysis, the labor parties argue, the department acted arbitrarily. They assert that the department has virtually ignored the addition, for the first time, of language that requires the department to consider "the need to encourage fair wages and equitable working conditions" in making its public interest determination. 49 U.S.C. § 1302(a)(3). This conclusion by the labor parties is understandable, but is not supported by the record. It is true that the labor parties did not prevail. But it does not follow that the department did not take into account the interests of industry employees in measuring the transaction's consistency with the public interest pursuant to H.R.Rep. No. 1211, 95th Cong., 2d Sess. 6, *reprinted in* 1978 U.S.Code Cong. & Ad.News 3737, 3742.

After this case was argued, the D.C. Circuit decided a similar question in *Air Line Pilots Assn., Int'l v. DOT,* 791 F.2d 172 (D.C.Cir.1986). In that case, the court held that it was "implausible" that the Deregulation Act "gave labor parties something they lacked under the previous regulatory regime, *i.e.,* an *assurance* that the [DOT] would consider imposing LPP's in every case." *Id.* at 177 (emphasis original). We agree. The additional statutory language does not require that the department impose labor protective provisions in any or all transactions. It does state in so many words that the agency must consider employee interests in evaluating the public's interest in the transaction and determining whether protective conditions should be imposed. *Braniff Master Executive Council of Air Line Pilots Assoc. International v. CAB,* 693 F.2d 220, 227–28 (D.C.Cir.1982); *Air Line Pilots Ass'n, Intl. v. CAB,* 643 F.2d 935, 941–42 (2d Cir.1981), (Mansfield, J., concurring). The department says that it did consider employee interests. *See* Final Order at 4–6, 58–59, 72.

■ In the section labeled "Public Interest Issues," the department notes United's agreement to hire a substantial number of Pan American employees, United's willingness to discuss the terms of the transfer with interested labor groups, and the benefits of a financially strengthened Pan American to its remaining employees before concluding that the Pan Am-United transaction "does not undercut the public interest in encouraging fair wages and equitable working conditions." *Id.* at 59. Later, in the "Conditions" section, the secretary cites some of these same reasons as part of her justification for not imposing limited seniority integration labor protective provisions. *Id.* at 72. These findings of fact are supported by substantial evidence in the record and have not been shown to be otherwise arbitrary and capricious. *See Bowman Transportation v. Arkansas Best-Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975), *aff'd* 425 U.S. 901, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976).

The labor parties insist that the department's change of policy is not only arbitrary and capricious, but that it flies in the face of the expressed will of Congress. As evidence of congressional intent, the petitioners rely (in supplemental memoranda) upon the action of the House of Representatives on September 16, 1986, in passing H.R. 4838 (99th Congress, second session). This bill, if concurred in by the Senate and signed by the President would mandate a return by the department to its pre–1978

practice with reference to labor protective conditions in airline merger cases. The session of Congress adjourned, however, without action by the Senate, and the expression of opinion by a majority of one house does not accomplish a change in the law. Under the law as it existed at the time of the challenged merger, the department acted within its authority. Because the department claims to have taken the welfare of the employees into account, and because that assertion does not appear to be sham or pretext, we are not at liberty to disregard it and characterize the department's action as an abuse of discretion.

Petition denied.