713 F.2d 305
 PEOPLE OF the STATE OF ILLINOIS, Illinois Commerce
Commission, and Patrick W. Simmons, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Louisville and Nashville Railroad Company, Party Respondent.
 No. 81-2585.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 21, 1982.
Decided July 25, 1983.
 
 David Nixon, Gordon McDougall, Atty. Gen. Office, State of Ill., Chicago, Ill., for petitioners.
 H. Glenn Scammel, I.C.C., Washington, D.C., for respondents.
 
 
 1
 Before PELL and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*
 
 
 2
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 3
 Petitioners, the State of Illinois, the Illinois Commerce Commission, and Patrick Simmons, Illinois Legislative Director for United Transportation Union, (hereafter collectively referred to as "state agencies"), seek review of an Interstate Commerce Commission decision denying their petition to reopen a railroad merger proceeding. The state agencies had requested the Commission to reopen Louisville & Nashville Railroad Company--Merger--Monon Railroad, 338 I.C.C. 134 (1970) and to extend the term of a condition imposed in that case.[1] That condition required the Louisville & Nashville Railroad Company (L & N) to maintain, at a certain specified level, the services and facilities of the Evansville-Chicago line. The state agencies' petition claimed that expiration of the condition would have an anticompetitive effect on railroad service and therefore could harm the public and local shippers. In a split decision (3-2), the Commission denied the petition, stating that no evidence had been presented to justify an extension of the condition. The petitioners appeal that decision, claiming jurisdiction under 28 U.S.C. § 2342(5).
 
 
 4
 In 1970, the ICC considered the proposed merger of the L & N and Monon and stated as one of the conditions of the merger:
 
 
 5
 2. Evansville-Chicago line condition.--(a) Upon consummation of the merger of Monon into L & N, the latter railroad shall, except as provided for in (c) below, furnish, for a period of at least 10 years from the date of such consummation, freight service to the public and, to the extent of its responsibility therefor, maintenance of line and equipment on the Evansville-Chicago line and its appurtenant facilities to at least the same average levels of service and maintenance as were provided on the Evansville-Chicago line for the 6 months immediately preceding service of this report and order;
 
 
 6
 (b) State, county, or municipal agencies, shippers, or any party to this proceeding considering that this condition is being violated by L & N may, individually or collectively, file a complaint with this Commission. Complaints so filed will be handled by the Commission under the procedures developed for complaints filed under the provisions of section 13 of the Interstate Commerce Act; L & N--Monon, 338 I.C.C. at 197.
 
 
 7
 In that decision, the Commission's reservation of jurisdiction (Condition No. 5) also addressed Condition No. 2:
 
 
 8
 5. Reservation of jurisdiction--general.--(a) If the merger of Monon into L & N is consummated in accordance with the authorizations herein, this Commission shall retain general jurisdiction for a period of 5 years from the date of said consummation for the purpose of issuing such further order or orders in these proceedings as may be necessary or appropriate: Provided, that the jurisdiction of this Commission is expressly retained for a period of 10 years from the date of consummation for the purpose of (1) issuing further orders with respect to condition No. 2 including orders extending the effective term of such condition or reimposing said condition in the event it shall have lapsed during the period of this reservation of jurisdiction, and (2) issuing a further order, or orders with respect to the quality and quantity of freight service and maintenance of line and equipment performed by L & N on the line and appurtenant facilities now operated by Monon: Provided further, that the jurisdiction of this Commission is also expressly retained for the specific purpose of requiring from L & N, under the provisions of section 20 of the act, such regular or special reports of its operation of the Monon line and the Chicago-Evansville line as the Commission may deem necessary: Provided further, that this condition is supplemental to, and not in lieu of, this Commission's authority to issue supplemental orders under section 5(9), and to require reports under section 20 of the Interstate Commerce Act, which authority is also expressly retained herein. 338 I.C.C. at 201-202.
 
 
 9
 It is undisputed that the L & N--Monon merger was consummated on July 31, 1971 and therefore Condition No. 2 would have automatically expired on July 31, 1981. However, the state agencies filed their petition to intervene and to reopen the merger case on July 29, 1981. The state agencies alleged that as a result of two recent ICC decisions, Louisville & Nashville R. Co.--Trackage Rights, 360 I.C.C. 115 (1979) and CSX Corp.--Control--Chessie and Seaboard C.L.I., 363 I.C.C. 518 (1980), the Evansville-Chicago line was
 
 
 10
 threatened with a diversion of through business which, under the perhaps unique features of the Evansville-Chicago Line, would impair service to local shippers.
 
 
 11
 The relief requested by the petition was the issuance of an order under Condition 5 which would extend the term of Condition No. 2.
 
 
 12
 The ICC denied the petition on July 31, 1981 stating in part:
 
 
 13
 Since the transaction was consummated on July 31, 1971, the original 10-year period, for the specific reservation of jurisdiction expires July 31, 1981. No evidence has been presented concerning the need to continue Condition 2. However, we retain general jurisdiction to enter supplemental decisions. Were a need for the condition presented, we could consider the request under our continuing jurisdiction. See 49 U.S.C. § 11351 and Louisville and N.R. Co.--Merger--Monon Railroad, 338 I.C.C. 134, 202 (1970).
 
 
 14
 However, two commissioners dissented. Although agreeing that no evidence had been presented of a need to continue Condition No. 2, they favored granting an extension of the condition for a short period of time pending an analysis of the public interest. The dissent contended that the Commission's authority to issue supplemental orders under 49 U.S.C. § 11351 was not equivalent to the authority reserved in Condition No. 5, and thus the denial of the petition would limit the agency's ability to grant appropriate relief. The state agencies bring this appeal contending that the dissent was correct and requesting that we vacate the ICC order and remand the cause for further proceedings.
 
 
 15
 Unfortunately, there is very little common ground between the parties on this appeal. They disagree on the interpretation of the ICC decision, the standard of judicial review, and the dispositive issues on this appeal. The state agencies' position is that a necessary premise of the ICC's decision is that the authority of the Commission under the retained jurisdiction of Condition 5 to extend the term of Condition 2 was equivalent to its statutory power to issue supplemental orders under 49 U.S.C. § 11351 (hereafter referred to as "the equivalency issue"). The petitioners argue that those two provisions did not confer equivalent authority on the Commission, that the majority erred as a matter of law in assuming they did, and that based on that error we should vacate the order and remand the case for further proceedings. The Commission and L & N respond with a flurry of arguments on jurisdiction and standing. Assuming we proceed beyond those preliminary matters, which we do, the respondents contend that the appropriate standard of review is whether the Commission abused its discretion in denying the petition to reopen the merger proceeding. They construe the ICC's order to be premised on the finding that the State of Illinois had presented no evidence of a need to continue Condition No. 2. The respondents do not believe that the equivalency of the Commission's authority under Condition No. 5 and 49 U.S.C. § 11351 was assumed or relied upon by the majority in its decision, and thus, they argue, it does not need to be reached on this appeal.
 
 
 16
 As noted previously, numerous preliminary matters such as jurisdiction and standing have been raised by the respondents. The statutory basis of jurisdiction is not at issue, as petitioners' reliance on 28 U.S.C. § 2342(5) is not attacked. However, relying primarily on Honicker v. Nuclear Regulatory Commission, 590 F.2d 1207 (D.C.Cir.) cert. den. 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 374 (1979), L & N argues that the Commission's decision is not a final order subject to judicial review. In Honicker, the petitioner had filed an "emergency petition" with the Nuclear Regulatory Commission (NRC) requesting that all nuclear power plants in the United States be closed. The NRC responded with a letter stating that staff analysis was required before a decision could be made and thus, while her request for immediate action would be denied, the matter was still under consideration. Honicker sought judicial review of the NRC's response but her petition was dismissed for lack of subject matter jurisdiction. The court concluded that the agency's letter was neither a final order nor a final agency action subject to judicial review. The opinion states two lines of reasoning which supported this determination. First, noting that there was no statutory or regulatory authority granting Honicker the right to file an emergency petition, the court observed that the NRC was under no obligation to respond to it. Additionally, the court stated:
 
 
 17
 [T]he administrative process is not completed, and there is no record or final determination of the substantive issues for reviewable appeal. 590 F.2d at 1209.
 
 
 18
 The situation before us, however, is distinguishable. The administrative process is not continuing and the parties agree that the only means of reactivating it would be through a separate petition under 49 U.S.C. § 11351. Furthermore, the petition filed before the agency was not so unusual as to fall outside the regulatory scheme. The parties bringing the petition had been previously granted standing to raise claims regarding the matter at issue, and the Commission had specifically reserved jurisdiction to take the action requested. Furthermore, the petition was filed on the ICC's Finance Docket and the Commission responded with a formal decision, not a letter. Therefore, we do not find that Honicker requires dismissal of the petition for review.
 
 
 19
 The ICC argues that we lack jurisdiction because the petition for review does not present a case or controversy within the meaning of Article III of the Constitution. While the Commission's reasoning is not clearly stated, the crux of the argument is that petitioners are seeking an advisory opinion on the equivalency issue. We do not construe the petition in this manner. The petitioners contend that the Commission erred as a matter of law on the equivalency issue and that that error justifies the vacating of the decision and a remand for further proceedings. While we may not accept petitioners' reasoning, we believe they have presented a justiciable controversy.
 
 
 20
 The ICC also argues that the state agencies lack standing to bring this petition for judicial review because they have demonstrated no injury in fact arising from the agency's decision. The Commission relies on the statement in its order that "no evidence has been presented concerning the need to continue Condition No. 2." This bootstrap argument cannot be accepted. We note that the Commission does not argue that petitioners lacked standing to file the initial petition before the agency. Indeed, such an argument would be unavailing. State agencies were specifically granted standing in subsection (b) of Condition No. 2 to seek enforcement of the condition. While that provision did not explicitly grant standing to seek an extension, that status is implicit in view of the underlying rationale of Condition No. 2. That restriction was originally imposed to resolve the "public interest aspect" of the merger, i.e., to avoid potential anticompetitive effects, see L & N--Monon, 338 I.C.C. at 145. Therefore, it was appropriate to grant standing to public agencies to oversee and enforce the public's interest. The petition filed by the state agencies seeking to extend Condition No. 2 alleged that relief was necessary to vindicate the identical public interest, i.e., to avoid an anticompetitive situation. Furthermore, even absent a specific grant of standing, it is likely that a state agency such as the Illinois Commerce Commission would have standing to make a claim before the ICC since their respective jurisdictions overlap, see Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967); Washington Utilities & Transportation Commission v. Federal Communications Commission, 513 F.2d 1142 (9th Cir.) cert. den. 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975). In such a situation, the determination of standing turns not on "injury in fact" in the sense of private damage, but on the relationship between the agencies' activities and the nature of the relief sought, see Coleman v. Miller, 307 U.S. 433, 445, 59 S.Ct. 972, 978, 83 L.Ed. 1385 (1939); United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 155-156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953).
 
 
 21
 Having resolved the jurisdictional and standing arguments, we can proceed to the next level of the preliminary arguments.[2] As noted previously, the parties do not agree on the appropriate standard of review. Recently, this Court addressed this issue in City of Wausau v. United States, 703 F.2d 1042 (7th Cir.1983). In that case, the court stated:
 
 
 22
 The reopening of a case for further evidentiary hearing is a matter entrusted to an agency's broad discretion ... In reviewing the [Interstate Commerce] Commission's denial of a rehearing we apply the "arbitrary and capricious" standard. [Citations omitted.] 703 F.2d at 1044.
 
 
 23
 The fact that petitioners' claim that the agency made an error of law, i.e., its alleged analysis of the equivalency issue, does not alter that standard. It merely requires that we engage in a two-step analysis. First, we must decide whether the agency made an erroneous legal determination. If we conclude that it did, then we must also determine whether that error rendered the agency's decision arbitrary or capricious, see e.g. National Ben. Life Insurance Co. v. Shaw-Walker Co., 111 F.2d 497, 507 (D.C.Cir.1940). Therefore, we must resolve the equivalency issue first.
 
 
 24
 Petitioners argue that the Commission erred in stating:Were a need for the condition [No. 2] presented we could consider the request under our continuing jurisdiction, see 49 U.S.C. § 11351 ...
 
 
 25
 The state agencies contend that § 11351 actually requires a greater burden of proof than a showing of need. They note the recent opinion in Greyhound Corp. v. I.C.C., 668 F.2d 1354, 1355 (D.C.Cir.1981) in which § 11351 was construed to limit the ICC's authority to enter supplemental orders to situations in which "good cause" is demonstrated. Noting the language in Condition No. 5, the petitioners state:
 
 
 26
 Clearly a "need" for a condition under reserved jurisdiction is entirely different from establishing "good cause" under section 11351. Pet. reply br. p. 8.
 
 
 27
 Apparently, the petitioners believe this distinction is very clear indeed, for nowhere do they offer us an explanation of it. The above-quoted sentence concludes a subsection of their brief and no authority is cited for the proposition. Certainly, their argument finds no support in Greyhound, for the court there stated:
 
 
 28
 In determining the meaning of the "good cause" requirement, we are persuaded that the language of the statute requires some event or change in circumstances which necessitates a supplementation or modification of a section 5(2) [49 U.S.C. § 11343] order before the Commission is authorized to act. [Citation omitted. Emphasis supplied.] 668 F.2d at 1362.
 
 
 29
 Since Greyhound is the only case construing this aspect of § 11351 and no party has taken issue with its interpretation, we find this construction rather compelling. Furthermore, "good cause" has been similarly construed in other contexts, Freeman v. Seligson, 405 F.2d 1326, 1336 (D.C.Cir.1968) ("Good cause" for purpose of determining whether documents should be produced is present when party shows that documents are necessary to establish claim); Greater Boston Television Corp. v. F.C.C., 463 F.2d 268, 277 (D.C.Cir.), cert. den. sub. nom. WHDH, Inc. v. F.C.C., 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972) ("Good cause" for purpose of determining whether appellate mandate should be recalled requires showing that recall is necessary to avoid injustice.). While "good cause" has been diplomatically described as an "elastic concept," Dinko v. Wall, 531 F.2d 68, 75 (2d Cir.1976), we, on our own research, have found no case in which it has been held to require a greater showing than need, as the petitioners seem to imply.
 
 
 30
 Thus, the only manner in which the ICC's authority under the expressly retained jurisdiction of Condition No. 5 differs from § 11351 is that under the former, the Commission can issue supplemental orders simply on a finding that such action is "appropriate." Petitioners do not argue this distinction and we do not find that it affects the result in this case. The term "appropriate" clearly denotes discretion and policy considerations, and therefore we would usually defer to the agency's expertise on such matters. At the time of the L & N merger, the Commission's policy was quite liberal regarding protective conditions. In fact, the Commission stated that it was imposing Condition No. 2 "not out of any sense of necessity, but merely out of an abundance of caution ..." L & N--Monon, 338 I.C.C. at 146. However, since that time the ICC has altered its policy and requires such conditions only upon a showing of necessity, see Missouri Kansas Texas R. Co. v. United States, 632 F.2d 392, 406 fn. 35 (5th Cir.), cert. den. 451 U.S. 1019, 101 S.Ct. 3004, 69 L.Ed.2d 388 (1981); Seaboard Coast Line R. Co.--Invest. of Control, 360 I.C.C. 582 (1979); CSX Corp.--Control--Chessie and Seaboard C.L.I., 363 I.C.C. 518 (1980). The petitioners have not challenged this change in policy and we will certainly not attack it sua sponte.
 
 
 31
 In their petition before the ICC, the state agencies alleged that as a result of two recent cases, Louisville & Nashville R. Co.--Trackage Rights, 360 I.C.C. 115 (1979), aff'd sub. nom. People of State of Illinois v. I.C.C. 622 F.2d 591 (7th Cir.), cert. den. 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 128 (1980) and CSX Corp., supra, the Evansville-Chicago line was threatened with a diversion of through business. However, in the CSX Corp. case, petitioner Simmons made the identical claim, see 363 I.C.C. at 548, and it was rejected, see 363 I.C.C. at 557-559. Furthermore, in making its decision in that case, the Commission explicitly considered the L & N--Trackage Rights case, see 363 I.C.C. at 558, fn. 31. Therefore, the petition in this case was simply a reiteration of the claim made by Simmons in the CSX Corp. case, and did not allege either new evidence or substantially changed circumstances as required by ICC Rule 98(d) (see, 49 C.F.R. § 1100.98(d)).
 
 
 32
 Accordingly, we conclude that the agency's decision to deny the petition was not arbitrary or capricious and the petition for review filed in this court is hereby denied.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The Railway Labor Executives' Association and the Brotherhood of Locomotive Engineers joined in the state agencies' petition before the ICC but are not parties to this appeal
 
 
 [2]
 We note that the briefs of L & N and the ICC spend an inordinate amount of time on preliminary arguments and almost no effort in discussing the merits of the Commission's decision. The best discussion of the merits was contained in L & N's Reply to Petition for Extension of Condition No. 2 (filed before the ICC and included in the Joint Appendix before this Court) which was not referred to in the briefs