Robert A. WALLACE, Jr., Petitioner,

v.

CIVIL AERONAUTICS
BOARD, Respondent,

Pan American World Airways,
Inc., Intervenor.

No. 83–5684.

United States Court of Appeals,
Eleventh Circuit.

March 20, 1985.

Rehearing and Rehearing En Banc
Denied April 30, 1985.

Hogg, Allen, Ryce, Norton & Blue, P.A., Robert L. Norton, Michael Mattimore, Coral Gables, Fla., for petitioner.

Thomas L. Ray, Civil Aeronautics Bd., George Edelstein, Robert B. Nicholson, Dept. of Justice, Washington, D.C., for respondent.

Pan American World Airways, Inc., Ernest L. Garb, Richard Schoolman, Andrew M. Upton, New York City, for intervenor.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

VANCE, Circuit Judge:

Petitioner Robert Wallace asks us to overturn a decision by the Civil Aeronautics Board reversing an arbitrator's award in his favor. Although we take issue with the Board's assertion that its decision was mandated by the deferential standard of review established by the Supreme Court in the *Steelworkers Trilogy*,[1] we cannot conclude that the standard actually applied, or the conclusions that resulted, were arbitrary or capricious. For this reason we find ourselves obligated to affirm.

## I. FACTS AND PROCEEDINGS TO DATE

In 1958 Congress entrusted to the CAB the duty of regulating airline mergers as part of its more general responsibility of promoting the stability of the carrier industry. 49 U.S.C. § 1378(b). Recognizing that airline employees are among those most likely to be harmed by mergers—and that their dissatisfaction poses potential dangers to the stability of the industry—the CAB has developed a set of rules called Labor Protective Provisions (LPP's) which it normally requires carriers to adopt as a condition to its approval of their mergers. The LPP's provide, among other things, that carrier employees are to be compensated when deprived of employment as a result of the merger,[2] and that either the employee or the carrier may request arbitration of disputes arising under the LPP's.[3]

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

2. Section 4(a) of the LPP's provides that:

   "Any employee of either of the carriers participating in the merger who is deprived of employment as a result of said merger shall be accorded an allowance ... based on length of service."

3. Section 13(a) of the LPP's provides that:

   "In the event that any dispute or controversy ... arises with respect to the protections provid-

On October 24, 1979, the CAB approved the merger of Pan Am and National Airlines. As a condition to that merger, Pan Am agreed to abide by the standard LPP provisions enumerated above. Robert Wallace, one of National's managers, sought to take advantage of the LPP's after he found himself placed in a position at Pan Am which was substantially less attractive than the one he had held at National. While his request was pending, Wallace was dismissed from his job at Pan Am. He then amended his petition to include an allegation of retaliatory discharge. The Board directed arbitration, *Pan Am-National Merger*, C.A.B. Order 81–7–39 (July 7, 1981), and its order was affirmed by the Court of Appeals for the District of Columbia Circuit, *Pan American World Airways Inc. v. C.A.B.*, 683 F.2d 554 (D.C.Cir.1982).

The arbitrator interpreted the Board's order compelling arbitration to mean that he was to decide three issues: (1) whether Wallace was discharged in retaliation for his decision to assert LPP benefits; (2) if not, whether he was otherwise entitled to LPP benefits, and (3) if he was entitled to LPP benefits, what the amount of his award should be. On July 2, 1982, the arbitrator concluded that Wallace was entitled to LPP benefits. The arbitrator resolved the first issue against Wallace because he found that the supervisor who made the ultimate decision to terminate Wallace did so because Wallace had earned the lowest performance ratings in his department, and that this was pursuant to the company's usual and customary practices and methodology. As to the second issue, the arbitrator determined that Wallace was entitled to benefits under section 4(a) of the LPP's because he was an "employee" who had been placed in a worse position "as a result of the merger." On this ground, the arbitrator awarded Wallace a dismissal allowance pursuant to sections 5 and 7 of the LPP's.

ed herein, which cannot be settled by the parties within 20 days after the controversy arises, it

On review, the CAB upheld the arbitrator on the retaliation issue, but overturned his award of benefits under section 4(a). First, it concluded that he had no authority to decide Wallace's rights under section 4(a) because only the retaliation issue had been submitted for arbitration. Second, it held that even if the arbitrator had been authorized to hear the section 4(a) claim, his conclusion was erroneous because Wallace was a manager at the time of the merger and therefore not an "employee" under the terms of the Pan Am-National LPP's. Third, the Board concluded that no matter what Wallace's eligibility status, the evidence in the record established that he had forfeited his right to LPP benefits by refusing three viable job offers that had been made to him. Last, the Board concluded that the arbitrator had improperly relied on extra-record information such as the Wall Street Journal in finding that the layoff occurred "as a result of the merger," rather than because of unrelated economic conditions. Wallace appealed to this court under 49 U.S.C. § 1486.

## II. ANALYSIS

■ Wallace asks us to find that the Board erred in subjecting the arbitrator's decision to review on its merits, instead of limiting itself to the narrow kind of inquiry formulated for judicial review of arbitral awards by the Supreme Court in the *Steelworkers Trilogy*. As Wallace correctly notes, courts conducting review of arbitral awards under the *Trilogy* normally limit their inquiry to determining whether the award was procedurally fair and impartial. *See Loveless v. Eastern Airlines, Inc.*, 681 F.2d 1272, 1275 (11th Cir.1982). Courts are not to vacate the award because of substantive mistake except in rare instances of egregious error, such as when the award is irrational, when it fails to draw its essence from the collective bargaining agreement, or when the arbitrator has exceeded a specific contractual limitation on the scope of his authority. *Id.* at 1275–76. Although

may be referred by any party to an arbitrator."

such extreme deference has its costs in the particular case, those costs are far outweighed by the general benefits that accrue to the national labor scheme from giving arbitral awards a strong presumption of finality. Finality benefits both sides; the employee obtains quick and inexpensive resolution of his claim and the employer is able to defuse the situation and thereby minimize labor unrest. In addition, the arbitrator has greater leeway to rely on his expertise in labor matters—and his sense about the true intent of the parties to the agreement—to reach a result that might well be more equitable and efficacious than that of a judge applying traditional rules of contract interpretation. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960). Finally, an arbitrator is freer to devote his attention to developing a "law of the shop" rather than building an evidentiary record that will withstand a stricter standard of review.

The CAB has reasonably looked to this aspect of the national labor policy for guidance in developing its own scheme for resolving disputes arising under the LPP's. It is now well established that it is within the CAB's power to order the parties to submit to arbitration of such disputes. *See Delta Air Lines, Inc. v. C.A.B.*, 574 F.2d 546, 549–50 (D.C.Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978); *American Air Lines, Inc. v. C.A.B.*, 445 F.2d 891, 895 (2d Cir.1971), *cert. denied*, 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 663 (1972). Indeed, the CAB has on a number of occasions professed to have adopted the *Trilogy* framework when conducting its review of arbitral decisions involving the LPP's. *See Pan Am-National Merger*, C.A.B. Order 83–5–99 (May 19, 1983), at 8. The detailed character of its opinion overturning the arbitrator's decision in this case leads us to question, however, whether the CAB has indeed fully adopted one of the *Trilogy*'s most fundamental principles—that the speed and effectiveness that make arbitration an attractive method for resolving labor disputes can be realized only if the reviewing body resolves to remain deferential even where it might have reached a different result. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 598–99, 80 S.Ct. at 1361–62; *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1276 (11th Cir.1982). In this case, the Board did much more than simply inspect the award for evidence of irrationality or manifest injustice. It subjected all aspects of the arbitrator's decision to searching scrutiny and in the process redefined the scope of the arbitrator's review, rejected his interpretation of significant contract terms, and even reapplied his findings of fact.

Notwithstanding this concern, we find that our own review of the CAB is limited by rules of deference of a different sort. Under 5 U.S.C. § 706, we cannot overturn the Board's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or ... unsupported by substantial evidence." *Pan American World Airways, Inc. v. C.A.B.*, 683 F.2d 554, 558 (D.C.Cir.1982); *Cohen v. C.A.B.*, 657 F.2d 999, 1002 (8th Cir.1981). In this case, fidelity to this rule of deference moderates our initial doubts as to the CAB's unorthodox interpretation of the *Trilogy* standards. It is not for the courts, which lack not only the agency's familiarity with the political and economic implications of its decisions, but also its general expertise in the area of airline mergers, to undertake its balancing processes anew.

Given the appropriately narrow scope of our review, we conclude that the Board's decision to take a harder look at the arbitrator's reasoning was not so arbitrary or capricious as to warrant reversal. The agency's decision to look to the national labor scheme in developing its policy for resolving LPP disputes does not preclude it from rejecting or modifying that policy for rational reasons. Some such modification

appears inevitable for a number of reasons. First, the CAB's foremost concern is to regulate airline mergers, rather than to promote any particular labor policy for its own sake. Second, the CAB's perspective on the dispute is different from that of a court reviewing an arbitrator's application of the terms of a collective bargaining agreement with which it has no familiarity. Here the CAB, rather than the parties, formulated the LPP provisions at issue, and so it is the CAB which has the best understanding of what those provisions are supposed to mean. Last, the arbitration provisions exist pursuant to the CAB's own mandate. Unlike a court called upon to review a dispute that has been arbitrated pursuant to a collective bargaining agreement, the CAB need not be concerned that it is interfering with "part of a system of self-government created by and confined to the parties." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581, 80 S.Ct. at 1352, *citing* Shulman, *Reason, Contract and Law in Labor Relations*, 68 Harv.L.Rev. 999, 1016 (1956). For these reasons the Board could reasonably conclude that a less deferential approach than that of the *Trilogy* is appropriate.

■ Having concluded that the Board did not act arbitrarily in choosing to evaluate the arbitrator's award on its merits, we must still determine whether its actual reasons for overturning the arbitrator represent reasoned decision making. Although the Board criticized the award on a number of alternative grounds, we find that we need to address only one; the threshold issue of whether the arbitrator exceeded his authority in deciding Wallace's section 4(a) claim. We find as an initial matter that the arbitrator reasonably interpreted the Board's ambiguous order compelling arbitration as empowering him to reach Wallace's section 4(a) claim. The order noted that a number of Wallace's claims were "colorable," and it likewise noted that

the issue of whether Wallace was an "employee" for purposes of the LPP's in question "is a matter for the arbitrator to decide." Based on these comments, the arbitrator had good grounds for concluding that all of the claims, including the section 4(a) claim, were before him. Were this a review of a judicial decision to overturn the arbitrator's award, this factor would weigh heavily in favor of the arbitrator's interpretation. As a general rule, an arbitrator's award should not be set aside for exceeding the scope of his decision making power "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1353; *see Waverly Mineral Products Co. v. United Steelworkers*, 633 F.2d 682, 684–85 (5th Cir. 1980); *International Ass'n of Machinists v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir. Unit A 1981). This is especially true when the question being submitted to the arbitrator is vague. *See Kroger Co. v. International Brotherhood of Teamsters*, 380 F.2d 728, 731 (6th Cir.1967). However, the Board's clarification of its order was not unreasonable. A restrictive reading of its order would admit of the interpretation now given it, and it would not have been unreasonable for the Board to intend that the arbitrator decide only two narrow issues; whether there was retaliation, and whether industry practice or company policy made Wallace eligible for benefits notwithstanding his manager status. "The Board's interpretation of the meaning of its own order and the scope of its own functions is entitled to great weight...." *Outland v. C.A.B.*, 284 F.2d 224, 228 (D.C.Cir. 1960). Given that the Board knew best what it meant, we find no reversible error in its decision to overturn that part of the arbitrator's order that did not comport with its original intent.[4]

---

**4.** Similar reasoning controls our review of the numerous other grounds upon which the Board found fault with the arbitrator's opinion. Whereas we would tend to find the arbitrator's reasoning not susceptible of review on its merits under *Trilogy* standards, we would be unable to find the agency to have been arbitrary or capricious for choosing to subject its arbitrator's rea-

In sum, although we believe that the Board is mistaken in its conception that it was applying *Trilogy* standards in its review of this arbitral award, we do not find it arbitrary or capricious for conducting the kind of review that it has in fact chosen. Notwithstanding its unfortunate choice of labelling terms, therefore, we uphold the Board's final decision.

AFFIRMED.

soning to more exacting scrutiny than the *Trilogy* would permit the courts. That the CAB may choose to formalize its proceeding so as to comport with traditional evidentiary rules, or that it wishes to place doctrinal correctness over speed and efficiency, is largely up to it. Whether we would consider this to be the most efficacious approach to arbitration is not at issue.