938 F.2d 1009
 138 L.R.R.M. (BNA) 2041
 EMPLOYEES OF the BUTTE, ANACONDA & PACIFIC RAILWAY COMPANY,
represented by Brotherhood of Maintenance of Way
Employees, Brotherhood of Airline Clerks
and Brotherhood of Railway
Carmen, Petitioner,
v.
UNITED STATES of America; Interstate Commerce Commission;
Respondents,
Butte, Anaconda & Pacific Railway Company (BA & P)
Respondent-Intervenor.
EMPLOYEES OF the BUTTE, ANACONDA & PACIFIC RAILWAY COMPANY,
represented by United Transportation Union, Petitioner,
v.
UNITED STATES of America; Interstate Commerce Commission,
Respondents.
EMPLOYEES OF the BUTTE, ANACONDA & PACIFIC RAILWAY COMPANY,
represented by Brotherhood of Maintenance of Way Employees,
Brotherhood of Airline Clerks, Brotherhood of Railway Carmen
and United Transportation Union, Petitioner,
v.
UNITED STATES of America, Interstate Commerce Commission, Respondents.
 Nos. 88-7138, 88-7162 and 89-70504.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1991.
Decided July 10, 1991.
 
 David M. McLean, Knight, Dahood, McLean & Everett, Anaconda, Mont., for petitioner.
 Steven L. Zelinger, U.S. Dept. of Justice, and Dennis Starks, I.C.C., Washington, D.C., for respondents.
 Robert J. Corber, Steptoe & Johnson, Washington, D.C. and Donald C. Robinson, Poore, Roth & Robinson, Butte, Mont., for respondent-intervenor.
 Petition to Review a Decision of the Interstate Commerce Commission.
 Before BROWNING, CANBY and TROTT, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 In this consolidated proceeding, various labor organizations (the Unions) petition for review of three orders of the Interstate Commerce Commission (ICC). In these orders, the ICC denied labor protective benefits to employees represented by the Unions. On appeal, the Unions argue that the ICC acted arbitrarily and capriciously or exceeded its jurisdiction in vacating an arbitration decision awarding benefits to the employees. The Unions also contend that the ICC should have reversed a second arbitration decision denying benefits. We affirm the orders of the ICC.
 
 BACKGROUND
 
 2
 When the Atlantic Richfield Company (ARCO) acquired the copper mine operations of the Anaconda Company of Delaware (Anaconda), Anaconda owned two railroads, the Butte, Anaconda & Pacific Railway Company (BA & P) in Montana and the Tooele Valley Railroad Company (TOV) in Utah. Because two railroads were involved, ARCO was required to obtain ICC approval of the merger pursuant to 49 U.S.C. Sec. 11343 (1988), even though the two railroads were separate entities and no consolidation, coordination, or interchange was physically possible due to location. The ICC approved the acquisition, conditioned on ARCO's acceptance of labor protective conditions (ultimately, the so-called New York Dock conditions). The ICC is required to impose labor protective conditions in authorizing rail mergers and consolidations. 49 U.S.C. Sec. 11347 (1988). The New York Dock conditions require arbitration of disputes regarding the application, interpretation and enforcement of the benefits conferred by the conditions.
 
 
 3
 In late 1979, the copper market collapsed. As a result, ARCO closed the copper smelter facilities located in Anaconda, Montana, which were the principal source of materials shipped on the BA & P. An additional reduction in mining and processing operations in Butte and Anaconda in 1981 further diminished the shipping volume on the BA & P and decreased employment on the railroad. As a result of these reductions, the United Transportation Union (UTU), and later, BA & P employees represented by other labor organizations, asserted that BA & P employees who were adversely affected by the job changes were entitled to New York Dock benefits.
 
 
 4
 In 1982, the UTU on behalf of its members requested the National Mediation Board to appoint a neutral member of an arbitration board as provided by the New York Dock conditions. The Board appointed Jack Cassle as the neutral of a three-member arbitration panel (the Cassle panel). After a failed attempt by BA & P to enjoin the arbitration, the matter was arbitrated.
 
 
 5
 The Cassle panel divided the arbitration into liability and damage phases. After hearings, Arbitrator Cassle issued an order dated September 26, 1984, in which he found BA & P liable for New York Dock benefits to employees adversely affected by reductions-in-force and job changes that occurred between February 15, 1978 and February 14, 1982. In the liability order, Cassle noted that the only "effects to the employees of the BA & P after the acquisition would be those that might result from economic considerations."
 
 
 6
 BA & P's liability was based on Cassle's finding that ARCO, Anaconda, and BA & P entered into a pre-transaction agreement with BA & P employees to accord protection for post-transaction job changes. Cassle imputed a contract from statements made by ARCO and Anaconda in the control application to the ICC and announcements to BA & P employees that employees would not be adversely affected by the transaction. He further determined that an express contract was formed between the applicants and the ICC when the ICC approved the application and the statements contained therein. On the strength of his determination that ARCO and the BA & P voluntarily provided for employee protection, Cassle rejected as irrelevant BA & P's arguments that employees were adversely affected by economic conditions that arose subsequent to the acquisition. Instead, Cassle determined that applicants knew the industry and could have foreseen the possible decline in the copper market when they represented that the transaction would have no adverse effect on employees.
 
 
 7
 On December 11, 1984, BA & P petitioned the ICC to reopen and clarify the conditions it imposed on the transaction.[1] In response to BA & P's actions, Arbitrator Cassle issued a Nunc Pro Tunc order signed on February 6, 1985, to clarify his liability determination. Cassle explained that ARCO's application to the ICC to acquire control of the railroads and representations by ARCO and Anaconda to BA & P employees regarding employee protection benefits constituted an offer to accord the labor protective conditions to any employee who became adversely affected during the term of the conditions "regardless of cause." According to Cassle, the ICC accepted the offer when it approved the transaction and imposed the employee protective conditions. Cassle concluded that the ICC's order was a "transaction" within the definition of 49 U.S.C. Sec. 5(2) and that a direct causal connection existed between the transaction and the job changes.
 
 
 8
 The Cassle panel resolved phase II of the arbitration on March 15 and May 15, 1986. The award became effective on May 22, 1986. The UTU then filed suit before the district court in Montana to enforce the award. The district court consolidated UTU's petition with BA & P's earlier petition to review the Cassle panel's phase I determination. Proceedings continued in the district court until the ICC rendered the decisions now on appeal before this court.
 
 
 9
 In the summer of 1985, a second arbitration panel was formed to hear the claims for protective benefits filed by BA & P employees represented by the Brotherhood of Maintenance of Way Employees, the Brotherhood of Railway, Airline & Steamship Clerks and the Brotherhood of Railway Carmen. Joseph Sickles served as a panel of one (the Sickles arbitration).
 
 
 10
 At the arbitration, the Unions asserted that Arbitrator Sickles was bound by the Cassle panel's earlier determination that BA & P was liable for New York Dock benefits. Sickles rejected this suggestion, and on February 2, 1988, concluded that the adverse effects to BA & P employees were not caused by ARCO's acquisition of control of the railroad, but resulted from Anaconda's changes in operation. Sickles therefore denied the Unions' claims for benefits.
 
 
 11
 The Unions petitioned the ICC for review of the Sickles' decision and brought an action in United States district court to enjoin, annul, set aside, suspend or judicially review an order of the ICC. In addition, they petitioned this court for review of the Sickles' decision.
 
 
 12
 Two weeks after the Sickles' decision was served, the ICC granted BA & P's three-year-old request to reopen and clarify the labor protective conditions imposed by the ICC when ARCO acquired Anaconda. Because BA & P's petition emanated from the Cassle award, the ICC decided to review the award itself. The ICC determined that it had authority to review the award under 49 U.S.C. Sec. 11351 (1988), which empowers the ICC to issue supplemental orders in proceedings in which it has previously exercised its authority. The ICC also noted that its earlier decision in Chicago & North Western Transp. Co., 3 I.C.C.2d 729 (1987) (Lace Curtain ), authorized review of arbitration decisions applying ICC-imposed conditions. The ICC confirmed that it would review the award under the standards set forth in Lace Curtain. Lace Curtain adopted the deferential criteria set forth in the so-called Steelworkers Trilogy.[2] Under these standards, awards are not vacated because of a substantive mistake unless there is "egregious error; the award fails to draw its essence from the collective bargaining agreement; or the arbitrator exceeds the specific contract limits on his authority."
 
 
 13
 The ICC concluded that review of Arbitrator Cassle's decision was warranted because Cassle had misinterpreted the scope of labor protection imposed in the control proceeding. According to the ICC, Cassle incorrectly found that the ICC had approved an agreement requiring ARCO to pay benefits to adversely affected employees regardless of cause. The ICC concluded that Cassle's finding "failed to draw its essence from the conditions imposed by this agency" as well as having "exceeded the limits of his authority as defined by the New York Dock conditions."
 
 
 14
 The Commission also found that Cassle had erred in his handling of the issue of "causal nexus." Although noting that it normally would not review issues of causation, the ICC decided to "reevaluate" the issue because Cassle's "determination of causation issues was based on the flawed premise that the Commission intended New York Dock benefits imposed in the control transaction to cover any and all future adverse effects on BA & P employees." Thereafter, the ICC found that Anaconda's post-1979 changes were made as a result of changing market conditions in the copper industry and that the market conditions caused the adverse effects on the BA & P railroad and its employees. Consequently, the ICC vacated the Cassle award in a supplemental order issued March 2, 1988.
 
 
 15
 The UTU petitioned the ICC to reopen, reconsider and clarify its supplemental order. The ICC consolidated UTU's petition to reconsider with the Unions' petition to review the Sickles' award and denied both petitions in a decision served September 21, 1989. In regard to the Cassle arbitration, the ICC rejected UTU's argument that the ICC exceeded its proper scope of review in reversing the Cassle decision. The ICC reasoned that it was permitted to vacate arbitration awards for egregious error. In regard to the Sickles' decision, the ICC ruled that Sickles had correctly stated and applied the burden of proof embodied in its New York Dock conditions. Because it found no error in Sickles' findings on causation, the ICC denied the petition.
 
 
 16
 The Unions then petitioned this court for review of the September 21, 1989 order. The Unions' petition was consolidated with UTU's earlier petition for review of the ICC order dated March 2, 1988 and the Organizations' petition for review of the Sickles' arbitration decision. We hereinafter refer to all of the appellants as the Unions.
 
 ANALYSIS
 
 17
 The orders challenged by the Unions are the Sickles arbitration award served February 2, 1988; the ICC supplemental order served March 2, 1988, reversing the Cassle arbitration award; and the ICC decision served September 21, 1989, denying a petition to reopen, reconsider and clarify the decision served March 2, 1988, and denying a petition to review the Sickles arbitration award. On appeal, the Unions argue that: (1) the ICC acted arbitrarily or capriciously or exceeded its authority and jurisdiction in reviewing the Cassle award, and (2) the Sickles' award and the ICC's refusal to review that award are arbitrary and capricious because they confer upon Arbitrator Sickles review powers in excess of those possessed by the courts or the ICC. We address each argument in turn.
 
 A. Standard of Review
 
 18
 We will overturn a decision of the ICC only if its findings or conclusions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right or unsupported by substantial evidence. 5 U.S.C. Sec. 706(2)(A), (C), (E) (1988); Gray Lines Tour, Co. of Southern Nevada v. ICC, 824 F.2d 811, 813 (9th Cir.1987).
 
 B. ICC Review of the Cassle Arbitration
 
 19
 The Unions assert that the ICC acted arbitrarily or capriciously in its review of the Cassle arbitration because it exceeded the permissible limits of review set forth in Lace Curtain, 3 I.C.C.2d 729 (1987). Although the Unions do not challenge the ICC's authority to review arbitration decisions, this circuit has not yet addressed the issue. Accordingly, we first determine whether the ICC properly may review arbitration decisions resolving disputes over the interpretation, application or enforcement of labor protective conditions imposed by the ICC. We conclude that it may.
 
 
 20
 Prior to 1987, the ICC excluded itself from the arbitration process, deferring to the expertise of the arbitrators in resolving the matters submitted to them for resolution. See, e.g., Haskell H. Bell v. Western Maryland Railway Co., 366 I.C.C. 64 (1981). In 1987, however, the ICC announced that it would review arbitral decisions issued under employee protective conditions originally imposed by the Commission. Chicago & North Western Transportation Co., 3 I.C.C.2d 729 (1987) (Lace Curtain ). The ICC noted that the Civil Aeronautics Board exercised the power to review arbitrations applying its labor protective conditions even though no statute authorized such review. See Wallace v. CAB, 755 F.2d 861 (11th Cir.1985). Because the Steelworkers Trilogy and other cases generally limited the scope of review of arbitration decisions, the ICC determined that it would limit its review to "recurring or otherwise significant issues of general importance regarding the interpretation of our labor protective conditions." Id. at 736. The ICC further stated that it would not review arbitrators' decisions on the issue of causation, the calculation of benefits, or other factual questions.
 
 
 21
 The Commission's decision to review arbitration awards relating to its protective conditions is consistent with the ICC's statutory powers. As the ICC points out, an arbitration award issued pursuant to labor protective conditions prescribed by the Commission is an "order" of the ICC. United Transp. Union v. Norfolk & Western Ry. Co., 822 F.2d 1114, 1120 (D.C.Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). The Commission has the power to change its orders if it gives a reasoned explanation of the change. Central States Enterprises, Inc. v. ICC, 780 F.2d 664, 674 (7th Cir.1985). In addition, the ICC may issue supplemental orders upon a showing of "cause." 49 U.S.C. Sec. 11351 (1990); People of State of Illinois v. ICC, 713 F.2d 305, 310 (7th Cir.1983).
 
 
 22
 The District of Columbia Circuit has upheld the Commission's authority to review arbitration awards. In International Broth. of Elec. Workers v. ICC, 862 F.2d 330 (D.C.Cir.1988), the court held that the ICC's determination that it had statutory authority to review arbitration awards was a permissible construction of its governing statute, the Interstate Commerce Act (ICA), 49 U.S.C. Sec. 10101 (1988) et seq. The court reasoned that the ICA is silent on the issue, and the ICC's decision to review is consistent with the terms of the statute, the relevant case law, and the ICC's own decisions. Id. at 338. We agree with the court's reasoning and adopt its rule.
 
 
 23
 In the present case, the ICC reviewed the Cassle award pursuant to its authority to issue supplemental orders. The ICC explained that Cassle had misinterpreted the labor protective conditions and exceeded the scope of his authority. Because the ICC adequately explained its decision to review, and cited good cause to issue a supplemental order, we conclude that the ICC could permissibly review the Cassle award. The fact that the ICC decided to review the Cassle award on its own initiative (BA & P did not specifically request the ICC to review the award) does not trouble us. Pursuant to 49 U.S.C. Sec. 10327(g)(1) (1988), the Commission may "at any time on its own initiative" reopen a proceeding because of material error. Accordingly, we proceed to the merits of the Unions' argument.
 
 
 24
 The Unions challenge the ICC's initial basis for reviewing the Cassle award--its determination that Arbitrator Cassle exceeded his jurisdiction. The Unions assert that Arbitrator Cassle did not exceed his jurisdiction; the arbitration panel was directed to decide whether the control transaction adversely affected BA & P employees and the panel answered in the affirmative. The Unions contend that the Cassle award is comprised of many documents and orders which must be reviewed as a whole. According to the Unions, the ICC improperly analyzed the rationale of the Cassle award, placing too much emphasis on Cassle's statement in the Nunc Pro Tunc order that BA & P employees were entitled to New York Dock benefits "regardless of cause." Cassle's ruling in the Nunc Pro Tunc order, the Unions assert, was based on alternative theories. Although Cassle determined that BA & P might be liable for benefits on the basis of the implied contract, he also found that BA & P employees were adversely affected by the control transaction.
 
 
 25
 In support, the Unions point to Cassle's February 3, 1984 order in which Cassle stated that there was a direct causal relationship, and the September 26, 1984 order indicating that Cassle was concerned about the establishment of a causal nexus. The Unions contend that if the Cassle panel was in fact attempting to award benefits to all employees regardless of cause, every claim that had been submitted by BA & P employees would have been honored. According to the Unions, Arbitrator Cassle rejected 30 of the 63 claims submitted to him because he concluded there was not a direct causal relationship in those cases.
 
 
 26
 We are not persuaded by the Unions' arguments. First, our review of the record shows that none of the thirty claims were dismissed for failure to show a causal connection. The reasons for the rejections were stated by Arbitrator Cassle in his ruling dated March 23, 1986 and May 15, 1986, and included retirement of the claimant, failure of the claimant to protect seniority or to return to work pursuant to recall, or absence of jurisdiction in the panel to hear the particular employee's claim. One claim was denied without explanation.
 
 
 27
 Second, after examining the Cassle award, we conclude that the ICC did not err in its conclusion that Arbitrator Cassle exceeded the scope of his jurisdiction. Arbitrator Cassle clearly did not confine himself to the bounds of his authority. Instead, he fashioned an agreement that simply did not exist. The ICC rejected Cassle's finding that the Commission had approved or adopted such an agreement. As the ICC noted, such an agreement is contrary to the purpose of the New York Dock conditions, which is to protect employees from adverse effects of the transaction approved by the ICC. Because the Cassle panel exceeded the scope of its jurisdiction, the ICC's decision to vacate that award was neither arbitrary, nor capricious, nor in excess of its jurisdiction.
 
 
 28
 The Unions next argue that even if the ICC permissibly reviewed and vacated the Cassle award, the Commission exceeded the scope of its jurisdiction by modifying Arbitrator Cassle's factual findings on the issue of causation. The Organizations point to the following language in the ICC decision:
 
 
 29
 In CNW, supra, 3 I.C.C.2d at 736, we stated that we will not review factual issues of causation. These issues are best left to the arbitrator. Here, however, the Neutral's determination of causation issues was based on the flawed premise.... His conclusions, particularly on post-transaction job changes, are thus faulty and the facts need to be reevaluated.
 
 
 30
 According to the Organizations, the ICC should have remanded the case to the Cassle panel for reconsideration of its findings on causation.
 
 
 31
 Because we conclude that the ICC did not substitute its findings of fact for those of the Cassle panel, we need not determine whether the ICC may exceed the permissible scope of review that it established for itself in Lace Curtain. See Wallace v. Civil Aeronautics Bd., 755 F.2d 861, 864-65 (11th Cir.1985) (upholding the Civil Aeronautics Board's (CAB) scrutinizing review of an arbitral decision and reapplication of the arbitrator's findings of facts despite the CAB's earlier proclamation of its limited review powers). The ICC's determination that the adverse effects suffered by BA & P employees were caused by changing market conditions does not differ significantly from Arbitrator Cassle's earlier conclusion that the "only effects to the employees of the BA & P after the acquisition would be those that might result from economic conditions." (Emphasis in the original.) The ICC merely reiterated Arbitrator Cassle's earlier findings.
 
 
 32
 Finally, the Unions argue that the ICC's findings of fact and conclusions of law are arbitrary and capricious because they ignore the evidence in the record. We disagree. As noted above, the ICC's findings were virtually identical to those initially made by Arbitrator Cassle, and they are supported by the record.
 
 1. The Sickles' Award
 
 33
 The Unions challenge the Sickles arbitration decision served February 2, 1988 and the ICC's September 12, 1989 order. The Unions argue that Arbitrator Sickles should have been bound by the res judicata effect of the earlier Cassle award. The Unions contend that, by refusing to review the Sickles award, the ICC conferred upon Arbitrator Sickles a greater power to nullify an award than that possessed by the courts and the ICC.
 
 
 34
 Because we have concluded that the ICC properly reviewed and vacated the Cassle award, this issue is moot. The reversed Cassle decision cannot provide a basis for issue preclusion.[3]
 
 
 35
 Accordingly, the orders of the ICC are AFFIRMED.
 
 
 
 [1]
 BA & P also filed suit in district court to review Cassle's liability determination. The district court stayed the proceedings pending a final award from the Cassle panel
 
 
 [2]
 United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [3]
 Although appellants argue that issue preclusion applies to unreviewed arbitrations, they do not cite any case in support. We have not located any case which holds that an arbitrator is bound by an earlier arbitration decision that is not approved by a court or an administrative agency